Let me call 21-3145 Norwood v. United Parcel Service and Mr. Sutter for the appellant. May it please the court opposing counsel, my name is Luther Souter and I am from Benton, Arkansas. And I clearly remember 1990 when my hero, President Bush, signed the ADA into law under the watchful eye of Bob Dole. The senator from whence this case... Can you stand next to the... Yes, I'm so sorry. Down in Arkansas we get kind of loquacious. In any event, I clearly remember that President Bush signing the ADA into law under the watchful eye of Bob Dole. The senator from Kansas from whence this case comes to you. Your Honor, beyond doubt, this case should be reversed and remanded for a jury trial. This comes to you in the unusual posture of me having filed a motion for partial summary judgment weeks, months before the defendant filed a motion for partial summary judgment. This came as a result of, after 27 years of practicing on the ADA, a little under 50% success granted up in the Supreme Court on multiple ADA cases. The 11th Amendment issue was my issue that I first got up there, Augsburg v. United States, that you all heard earlier today, and then there was judicial estoppel. In all of this, I say this to recognize the discussion that this court showed in Ex Pistole. I've read that opinion very briefly, very, very intensely. I can tell you, Your Honors, that this case breaks down to this amount of paperwork. I would suggest to you, summary judgment isn't as cheap as everybody thinks it is. Nonetheless, Your Honor, I'm going to be talking to you all about Ex Pistole and APX 171, which is an email that is the only evidence UPS has to defeat my motion for partial summary judgment that supported their motion for summary judgment. Because in Ex Pistole, the Enmont court, and I recognize that you three were in the dissent on those issues, but again, it was a very interesting chicken or the egg issue. The majority opinion in Ex Pistole said this. The ADA's purposes include assuring full participation in society for individuals with disabilities. And as a result, in this Enmont opinion, and I'm reading from, I believe, Head Note 11, or excuse me, Head Note 10, an employee- I'll let you come back to that in a minute. I just want to drill down a little bit on the facts here. We're trying to determine whether the interactive process, we're negotiating an accommodation under the ADA, which employers are supposed to do, employees are supposed to cooperate, and the district court concluded that Ms. Norwood wanted a tape-recorded sessions, meetings, and that was her demand, and that was her consistent demand. UPS consistently disagreed with that particular accommodation, and that nothing else was ever suggested as an alternative, and consequently she resigned, retired, because the tape recorder was not going to be supplied. That's a pretty good 30,000 foot red rest station. Take me down to 10,000. All right, so here we go. Being a pilot, we're about to start an emergency descent. And so, before I start, I just want to reiterate that the framework that we're applying today is that once an employee, and I'm quoting here, makes an adequate request for an accommodation, thereby putting the employer on notice, an employer's failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination. And so what this means, just where we were, is once the employee suggests a plausible accommodation, then the burden shifts to the employer to offer an accommodation. And the breakdown in this case happened because in June of 2018, the UPS regional ADA committee approved a note taker. In this record, the only evidence of what was communicated to my client is what her husband and what she was told by Glenn Day, the UPS HR representative coordinating the ADA process. So is the email you were talking about the email that says, you know, we've been talking to you, we can't do the recording, but would a note taker help you? Is that the one you're talking about? Well, that wasn't the one that I was going to answer, Judge. Well, you were holding up, you said there's one document, this one email is the one that they granted summary judgment based on. Well, we will get to that. But the document that I was holding up was APX 183, which is an email from Susan Norwood in January of 2019 that says, what accommodation will UPS agree to? Now, bear in mind that she had this conversation with Glenn Day, a conversation that he can't remember anything about. You'll find that testimony at APX 2720. In that conversation, my client clearly says, what is UPS offering? And in response, he doesn't say anything, not a single thing about the note taker. And when I ask him about it in deposition, he can't remember the phone call. And then when I take Ms. Narumetsu's deposition, the UPS ADA subject matter expert, she says that UPS, under its own policy, had a duty to be truthful to my client. And the district court disregards that testimony as hypothetical, as speculative. Well, what about the email I was talking about that says? It's not clear. Hold on, hold on. Yes. I know you don't think it's clear.  We can't give you a recording. Would a note taker help? Did she ever then say? I mean, at that point, doesn't your client have to say, you know, I think a note taker would be a suitable alternative to my? And then, I mean, that's what the interactive process is about, because UPS doesn't have to agree with everything. I ask you, I say, Mr. Souter, what can I do to help you up there? You're like, well, I talk loud. Turn down the microphone. You know? And so I say, well, we can't turn down the microphone, because we've got to keep it. Is there anything else I can do? You know? And then we continue to talk. I mean, they don't, the law isn't, is it that they have to come out immediately with a proposed accommodation? I mean, can't they test you on it first, to make sure they're not asking you about something you'll reject? Well, I guess that's, a jury could find that. But we're here on summary judgment. And courts shouldn't resolve inferences against the non-moving party. And so what we're here with is we're talking about inferences that should be granted in my favor. My goodness, didn't my motion for partial summary judgment deserve some type of consideration, since it had been filed months before? Citing the law, to your point, that once my client identified a plausible accommodation, and we did, it was the same accommodation that I litigated in Battle vs. UPS. I traveled the country litigating against UPS. My aunt retired out of there 40 years ago. And so I'm telling you, I litigated this same issue before Judge Webb. I don't know if you remember Judge Webb from North Dakota. Heck of a guy. And the Eighth Circuit affirmed on these exact same facts, almost. It's called Battle vs. UPS. So we, Judge Odd, we proposed an accommodation that had already been litigated in Battle vs. UPS, that a jury had returned a verdict on saying it was reasonable. And UPS made the decision to reject that. As Judge Carson, you will recall, they can do. It's supposed to be interactive. But there's nothing interactive about deception, judges. And if y'all affirm this decision, it is going to create a situation where employers across this nation are excused from telling the truth. Because my client has evidence that Glenn Day lied to her in response to a direct question, what does UPS propose? There was no response. It was, have you considered? And then, to your point. What was her response to the, have you considered? Another question. Did she say? Another question. I considered that and I rejected. No. What was her response? What accommodations would you agree to? No answer to that. None. I challenge Learned Counsel to find, it's APX 183. Yes, Your Honor. Who are you quoting? Huh? Who did you just quote? Susan Norwood. Okay, so in the response to the, would you? I may not be following you. I think Judge Timkovich is trying to parse out who said what. So in response to the, would you consider a note taker, her response was, what are you offering? Yes, because that is what the law required. The record shows, I was involved in this during this process. And the law in 2018 was, in this circuit, that once a plausible accommodation was proposed, and there is no dispute that it was plausible, they responded. And that response was concealed from my client. And then when the district court refused to even consider Naramatsu's deposition, Nurse Naramatsu, who is a subject matter UPS employee expert on ADA and accommodations, she was very, very clear. So after Ms. Norwood said, what are you, what was her testimony, what are you suggesting? Well, she asked Ms. Norwood in an email, in the record at APX 183, said, what accommodations would you agree to? And what was UPS's response? There was none. There is none in this record. And how long after that email did she submit? Three weeks. Her severance package of retirement. Three weeks. And were there any communications between that email and her retirement request? There were some, but this entire ADA accommodation request was put on a legal hold. A what hold? A legal hold. What's that? It was something that UPS's internal legal department did that told Ms. Naramatsu, the person that was coordinating this ADA process, to stand down because the lawyers were involved. They never, ever told us clearly. You're the lawyer that was involved? Yes. Were you representing her all along? Yes. The entire process? Yes. And the law was that once they agreed that, hey, this was plausible, we're not going to agree to it. But hey, this is plausible. They were under an obligation to tell us what they offer. And that's what I'm asking you all to hold today. I'm not only asking you to reverse the grant of summary judgment in favor of UPS. I'm asking you to take up my motion for partial summary judgment and remand it for trial on damages. Thank you for your patience. I know you can tell I test you all sometimes. May I stand down? Thank you, counsel. All right. Let's hear from UPS. This may be a little tall for me. I'm not as vertically blessed as some. Good morning. My name's Daniel Johnson. I'm the attorney for UPS in this matter. And I am certainly happy to be with the three of you and my colleagues here in person today to talk about this important case. The issue here is whether or not a reasonable jury could conclude that anybody beside Ms. Norwood and her agents caused the end of the interactive dialogue between UPS and Ms. Norwood. That's the narrow issue that was granted summary judgment on below, and that's why we're here today. So the issue here is once Ms. Norwood identifies a facially plausible reasonable accommodation, as your honors already identified, there is a mutual obligation to engage with each other in good faith to determine whether there is any number of reasonable accommodations that would allow Ms. Norwood to perform the essential functions of her job. That process is set forth at detail in the record, but generally speaking, on June 28, 2018, there's a meeting of the ADA committee. And the ADA committee reviews Ms. Norwood's request to tape record conversations in the workplace. And they decide, no, we're not going to do that because it's unreasonable, and they set forth particular reasons why. You know, she's exposed to confidential information in the workplace, it violates UPS policy, and then I think thirdly is because she participates in phone calls that cross state lines, at times that may actually violate different states' laws, so they're not going to allow her to tape record. What they do do, and I think this is important, is they identify other potential reasonable accommodations. The plaintiff in this case, and then the briefs, makes a big deal about whether or not there was an accommodation decided upon that should have been offered to Ms. Norwood. That's not what the ADA committee actually decided. What they decided was there's potential out there for other accommodations that we need to discuss further. Specifically, they said, how about agendas for specified meetings, how about taking notes for specified meetings, and thirdly, how about a designated note taker who will also take notes contemporaneously with Ms. Norwood, and after the meeting is over, you can compare your sets of notes to ensure completeness, consistency, and accuracy. So what are we supposed to take away from that as far as what the committee decided? Is it fair to say that that was on the table then? The potential for those accommodations... I mean, if they floated those, and she said, yeah, that'll work, was it going to happen? Yeah, so I think, and that's the dialogue with, and his name is Eric Day, by the way, I think counsel misstated his first name. What happens is Eric Day is the liaison between the committee and Ms. Norwood, and so he's tasked with conveying accurate information to her about that process, and what he does is consistent with the June 28th ruling. From July 2nd until the process ends on July 12th, he's asking for her to identify the specific meetings that she needs agendas for or note takers for. That's very much consistent with what the ADA committee tasked him with. They said, we're open to these ideas, but we need to know the specific meetings for which she needs that accommodation. She never answers that question. Okay, and there's going to be evidence in the record that basically backs up exactly what you said, that we need more information. These seem like good ideas, but we need more information, so Mr.... Yes. Okay. Yes, Your Honor, and I apologize if I interrupted the end of your question. No, that's... What ends up happening is the ADA committee is very clear about what they find and what they don't, and Judge Crabtree's order is very clear about that, too. The proposed accommodations coming out of the ADA committee are limited to specified meetings, so in order to accommodate Ms. Norwood, the committee needs to know what meetings she needs those accommodations for, and the law on the circuit's clear. It's a give and take. The only person who knows the answer to that question about what accommodations she needs, or excuse me, what meetings need to be accommodated, is Ms. Norwood, and so the dialogue from July 2nd to when the conversation ends on July 12th, there's a consistent theme from UPS's communications where they're asking her to identify what meetings do you need those accommodations for, and the emails are set forth at length in both in the record and in Judge Crabtree's order. What's interesting about it is Ms. Norwood responds to all those communications the same way. The first way she responds is by steering the conversation back to her favorite accommodation that Mr. Day had already told her, and it's in the record, tells her a number of times, not only it's not going to be granted, we're not giving you a tape recorder, but here are the reasons why. It's very clear she doesn't like that answer, and that's, I guess, her subjective right is to be dissatisfied with that answer. The other thing she does is she doesn't answer the other questions that UPS is trying to use to discern whether it can actually accommodate her needs, and because she's not answering those questions, it keeps the interactive dialogue from advancing to the next stage, which is, okay, now we know these are the specific meetings that you need agendas or note-takers for, and so we'll either yes, approve that, or no, we won't. So it gets hung up on that process. The other thing that Judge Crabtree notes below is that dialogue is fairly consistent from July 2nd to the 12th when the conversation ends. It's both in text message and in phone calls and in emails, and what happens on June 12th is Ms. Norwood's agent, who happens to be her attorney now, inserts himself into the process and says, I'm here to negotiate a severance, otherwise she's going to retire. Doesn't follow up on any of the pending ADA questions. The thing that actually kills the conversation on June 12th is her own lawyer's intervention on the case. That's pretty clear, and Judge Crabtree identified that below. As to the evidentiary rulings that my colleague complained about, I think I would just note for the court, by way of reminder, we're here on summary judgment, so of course the overarching standard is de novo review, but those evidentiary rulings on summary judgment are abuse of discretion reviews. Those are balls and strikes by the lower court, and the authority on that is pretty clear, even when it's potential expert testimony. With respect to Ms. Naramatsu, there's a couple of things at play there. The first one is, District Court certainly didn't abuse this discretion by not allowing her to offer speculative or hypothetical testimony. It's true that she is one of UPS's key point persons on the interactive dialogue in that ADA process, but the questions that her testimony was offered on are things that she didn't know anything about. For example, her last role in this case was in that June 28th meeting where the ADA committee decided to reject the tape recording request and to propose alternatives, or potential alternatives. She's not involved in any of the dialogue with Ms. Norwood in June. She doesn't know what conversations are happening between Mr. Day and Ms. Norwood. Instead, when she's deposed, in her individual capacity, by the way, not as a 30b6 witness, she's asked hypothetical questions about if Mr. Day didn't tell the truth, that's bad faith, right? And she says, well, yes, of course it is. But she doesn't know what Mr. Day said or not, and so it is hypothetical and speculative, or at least it's within the District Court's authority to, excuse me, discretion to exclude that testimony. Why wouldn't a simple take on this case be UPS, the employer, at least has to say, would you be willing to take a note-taker? Sure. And I assume if you had done that, we wouldn't be here. Sure, so I would agree with your argument. Mr. Sooner wouldn't be arguing about that. So July 11th, there is an email from Mr. Day, and it's consistent with what I just told you before, and you'll see it when you look at the record. The July 11th email first explains again to Ms. Norwood why she's not going to have a tape recorder granted. The second part of that email solicits identification of the particular meetings for which she needs accommodation, meetings that she needs an accommodation for. Included in that email is a question, have you considered a note-taker? Do you think that's good enough? You're saying that's a variation of my question, would you accept a note-taker? Right, so we moved below for summary judgment on two issues, right? We moved below on the proposition that we offered her a note-taker by asking that question. Judge Crabtree, doing his job, said, you know what, a reasonable jury could conclude that that question wasn't the same as a statement, so I'm not going to give you summary judgment on did you offer a note-taker. He says, but certainly from the record, it's clear that you interjected the idea into the dialogue, which is exactly what the interactive process requires you to do in good faith, is to propose alternatives to each other, and in that context, whether it's an interrogatory statement or a declaratory statement, it really doesn't matter. The idea is injected into the conversation, so there's no evidence that Mr. Day was hiding the ball from Ms. Norwood or not telling her what UPS was potentially willing to consider. That's just not in the record, and Judge Crabtree noted that. He said the implication that there was a lie told or a misrepresentation or a falsehood is not a reasonable inference from this record. And then after that email, was there a passage of time with no communication, and then you get the retirement severance package? Sure, so it's interesting the way that plays out, and I appreciate you raising that. So the communication from Mr. Day is on July 11th. Ms. Norwood responds to that at 8 p.m. on July 11th and doesn't answer his questions. That's undisputed in the record. Doesn't answer his questions about what meetings do you need a note-taker or an agenda for. Instead, what happens the very next day is Ms. Norwood's lawyer contacts UPS and says, I'm here to negotiate a severance or she's gonna retire. So the dialogue ends on July, there's no opportunity to follow up with her and say, hey, you didn't answer my question. Never mind the fact that for the last 10 days, UPS has been asking some variation of the same questions. And so I think one of the themes, and I think maybe the best thing that develops when you read the briefs and read the record in Judge Crabtree's order is when you view the evidence in totality and you're looking at who dropped the ball, right? It's a game of hot potato. Who dropped the ball on the good faith interactive dialogue? UPS is having the dialogue. The dialogue may be strained, may be frustrated because Ms. Norwood doesn't like some of the answers she's getting. But the reality is that dialogue's ongoing right up until July 12, 2018 when her attorney inserts himself into the process. And then to answer your question, Your Honor, I believe she actually ends up submitting her, she sends an email later in July telling one of the managers at UPS that she intends to retire, but she doesn't actually submit her retirement paperwork until September. What's interesting about that is even though her lawyer had instructed UPS to only communicate with him about this matter, Ms. Norwood continues to contact UPS every few months and say, hey, can we still talk about this? And what the record shows is UPS is willing to do that. Even after she submits her retirement and they filled her position accordingly, she contacts them after the fact and says, why can't I have a tape recorder? What the evidence shows is that UPS is willing to reengage in the dialogue. They say, we can reverse your retirement and start looking for reasonable, excuse me, other positions that you're qualified to perform with or without an accommodation, which is exactly what the law requires us to do. And so I think the most compelling thing when you really pull the lens back and look at this case is UPS was always willing to have this dialogue. There was never a moment in which UPS said something that was false to her, said something that was untrue to her, or otherwise misrepresented what the lay of the land was. They wanted Ms. Norwood to continue to be a successful employee at UPS. And that's just clear from the record. This isn't the case like some of those that the plaintiff cited in her brief where the employer doesn't lift a finger or gaslights the employer or tells them something that's not true or has already made up their own mind to fire the employee. That's not this case. Couldn't you say, though, that the company hit the ball a bit on what they were willing to take? So you could if the company had decided already, right? And I think that's the nuance, right? So I think the law is clear. Once we decide this is the accommodation we're willing to provide you, you do have to say that. But the notes coming out of the ADA committee were we are willing to consider agendas and note-takers for specific meetings. Until Ms. Norwood told them what meetings she needed them for, they couldn't finalize that process. Once they received that information, I agree with you, they would then have to go back and say, okay, we can do XYZ meetings and we should absolutely be candid and straightforward about what we're willing to provide her versus not. That's not what happened because she never answered that question despite 10 days of dialogue where she was being asked that very specific question. So I think that's a nice summary of the case. I think you have a well-developed record in front of you. I ask you to affirm the lower court's ruling. Hannah, thank you for your time today. Thank you, counsel. Thank you. One Supreme Court argument, more appellate opinion arguments than I can count, and I've never heard two lawyers with a different, more different idea of what the record is than what you've heard today. Judges, at the end of the day, there's evidence in this record that the committee decided. There's a reasonable inference that the committee decided to give her a note-taker. There is evidence that my client asked Eric Day, what does the committee propose? And in response, he lied. She then has this exchange in July and the record shows she goes, she experiences a nervous breakdown and that's why the email was sent. At no time does anybody at UPS reach out to me or do anything other than that. And it ends with this January 23, 2019 email that says, what accommodations would you agree to? Judges, I appreciate your patience with me. You're representing her at that point. Did you ever ask UPS for a bottom line before the retirement? It's not in the record. I sent an email saying that if we couldn't get this accommodation, that she would retire. But the reason she was asking, clearly, what do you offer, is she had to take that back to her doctor to see if it would work. And just asking, would you consider it? That's a fine bit of law you're in, but it doesn't meet the law's requirement that once a plausible accommodation is requested, it's UPS's obligation to offer. And so, judges, I appreciate your patience with me. Thank you, counsel. We appreciate your arguments. You're excused, and the case is submitted.